UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

GERMANEY JOHNSON,          ) Case No.:1:15CV1811
                                   )
        Plaintiff            ) JUDGE CHRISTOPHER BOYKO
                                   ) Magistrate Judge Ruiz
                                   )
        v.                   )
                                   )
OFFICER ZAKI HAZOU, et al.,    ) REPORT AND RECOMMENDATION ON
                                 ) DEFENDANTS' MOTION FOR SUMMARY
        Defendants       ) JUDGMENT

## I.    Introduction

The plaintiff Germaney Johnson filed a Section 1983 suit *pro se* in this court, against defendants Officer Zaki Hazou, Officer Ronald Kubacki, and Sgt. Dave Tomcho, all of the Strongsville Police Department.  In brief summary, the lawsuit arises from Johnson's arrest after he refused to provide his driver's license or vehicle registration to police officers who asked him to provide the information when they approached his car, which was stopped and appeared to be disabled in the middle of a roadway.  Johnson alleges that he advised the police officers that he had run out of gas and was just waiting in the car for his wife to return from a nearby gas station.  (R. 1, at 6.)  Johnson refused repeated requests to provide his identification, argued with officers and subsequently was arrested.

Johnson's complaint contains multiple claims: (1) excessive force; (2) deprivation of free speech and expression; (3) conspiracy and retaliation for the exercise of constitutional rights; (4) fraud; (5) breach of oath; (6) kidnapping; (7) intentional infliction of emotional distress; (8)

1

negligent infliction of emotional distress; and, (9) negligence.[1]  (R. 1.)  The latter three claims are designated as "common law" (state law) claims.  (R. 1, PageID #: 24-25.)  Defendants have moved for summary judgment (R. 28), Johnson has filed an opposition brief (R. 29), and defendants filed a reply brief (R. 30).

After a thorough analysis of the parties' filings and applicable law, the undersigned recommends that Defendants' motion for summary judgment be granted and judgment rendered in defendants favor, for the following reasons.

## II.    Background

The evidence the parties have placed before the court is as follows.  On February 9, 2014, Johnson was driving with his family in a Cadillac Escalade ("SUV") that was not registered to him.[2]  (R. 28-1, Defendants' Exhibit ("DX") A, Johnson dep., PageID #: 288-289.)  Johnson's vehicle ran out of gas and stopped in the left lane heading north on Pearl road.  (Johnson dep., PageID #: 273-274, 291.)  Another driver stopped and helped Johnson push the SUV out of the left traffic lane, into the center (turning) lane.  (Johnson dep., PageID #: 275, 280-281, 283-284.) Johnson and one son remained in the SUV, with the hazard lights on, while his wife and another son walked to a nearby gas station.  (Johnson dep., PageID #: 285, 287.)  Approximately ten minutes later, a police car pulled up behind Johnson's disabled vehicle.  (Johnson dep., PageID #: 294.)

---

[1]  Although the caption of the complaint mentions several other claims (e.g., racketeering, extortion, theft) (R.1, PageID #: 1), the body of the complaint itself sets forth the nine discrete claims which will be addressed below.

[2]  Johnson testified that the vehicle was not registered in his name, nor in his wife's name, but was possibly registered to his mother.  (R. 28-1, Johnson dep., PageID #: 288-289.)

Officer Hazou and his partner, Officer Kubacki, both in uniform, were patrolling in a marked police car, when Officer Hazou noticed the SUV stopped in the middle turning lane, with its hazard lights activated, and impeding the normal flow of traffic.  (R. 28-2, DX B, Hazou aff., PageID #: 361.)  The officers stopped behind the parked SUV, activated the police car's emergency flashing lights, and Officer Hazou looked up the license plate on the vehicle.  *Id.*  He determined that the SUV was registered to a woman's name.  *Id.*

Officer Hazou and Officer Kubacki approached the SUV and noticed the driver was a man (Johnson).  (R. 28-2, DX B, Hazou aff., PageID #: 362.)  Officer Hazou asked Johnson what was wrong and Johnson stated he ran out of gas.  (R. 28-3, DX C, Kubacki aff. PageID#: 364)  Officer Hazou then asked Johnson for his driver's license.  (Hazou aff., PageID #: 362; Johnson dep., PageID #: 295, 310.)  Johnson asked him why they needed to see his identification, and refused to provide it.  (Johnson dep., PageID #: 295, 297-299; Hazou aff., PageID #: 362.)

Johnson told the police officers that the vehicle had run out of gas, and that his wife was getting gas.  (Johnson dep., PageID #: 310.)  Officer Hazou responded that he still needed to see Johnson's identification and registration.  (Johnson dep., PageID #: 310.)  Johnson still refused to provide it, and continued to question why the police needed to see his license.  (Johnson dep., PageID #: 310; Hazou aff., PageID #: 362.)  Officer Hazou asserts that he referred to the Ohio Revised Code, to which he states Johnson responded, "it's a code, not the law."  (Hazou aff., PageID #: 362.)

Johnson states that Officer Hazou told him that if he did not give him his identification and registration, they would arrest him.  (Johnson dep., PageID #: 310.)  Officer Hazou asserts that, after Johnson repeatedly refused to provide his license, Hazou ordered him out of the car.

3

Officer Hazou states that he called for back-up assistance, after Johnson three times refused his order to exit the vehicle.  (Hazou aff., PageID #: 362.)

Meanwhile, Officer Kubacki also advised Johnson that they needed to see his driver's license because they had stopped to check on him and his disabled vehicle, which was a hazard in the roadway, and they needed to identify who they were dealing with.  (R. 28-3, DX C, Kubacki aff., PageID #: 364.)  According to Officer Kubacki, Johnson continued to argue with the officers, and Kubacki informed him that, if he would not provide his license, he would be arrested.  At that point, Officer Kubacki reports, he opened the driver's door.  (Kubacki aff., PageID #: 365.)

Johnson's deposition testimony did not address the specific events of his actual arrest. The allegations of the complaint are that Johnson was "forcefully grabbed" by the arm, and "violently yanked" out of his car.  (Compl., PageID #: 7.)  The affidavit which Johnson has filed in support of his opposition to the motion appears to be more directed toward a subsequent criminal prosecution for, *inter alia*, resisting arrest in the Berea Municipal Court, than to this case.  (R. 29-2, Plaintiff's Exhibit ("PX B"), G. Johnson aff., PageID #: 445.)  Nevertheless, Johnson's affidavit states the following, in relation to the circumstances of his arrest:

> Germaney C. Johnson (the man) committed no crime but was kidnapped by Affiant: PTL ZAKI HAZOU (a living man[3]) along with other living men who were to be in the capacity of Public Servants.
>
> * * * * *

---

[3]  Johnson repeatedly refers to individuals involved in the events of this case as "a living man."  It is unclear to the court what significance this repeated phrase is meant to convey.  There is no indication in the allegations or the facts that any of the individuals involved have since died, nor is there any indication that any of the persons involved were deceased at the time of the events, or died as a result of the same.

4

> NOTE: this matter began with Police Officers making an arrest without a crime being committed or a Warrant for the living man, Germaney C. Johnson.  After being kidnapped, Germaney C. Johnson's family members had to pay ransom moneys to the Berea Municipal Court Clerk (of which was called bail) for the release of Germaney C. Johnson from their imprisonment.

(G. Johnson aff., PageID #: 445.)  There is no reference in his affidavit as to any force used to

effectuate his arrest.

In support of his opposition, Johnson also submitted an affidavit from his wife, Abigail L.

Johnson, which again appears to be more directed to the Berea Municipal Court case, than to this

case.  (R. 29-1, PX A, A. Johnson aff., PageID #: 442.)  On the issue of Johnson's arrest, Abigail

Johnson states:

> . . . Germaney C. Johnson, (a living man) was kidnapped, physically injured, emotionally injured and robbed (in front of his wife and two sons, three other living souls) Zaviayre G. Johnson, Aziyah G. Johnson and Abigail L. Johnson), on February 8, 2014 . . . by four (4) Strongsville Ohio Policemen who also put him in prison.
>
> * * * * *
>
> Germaney C. Johnson's arm, elbow and shoulder were also injured during the kidnapping and imprisonment of which Abigail saw when the Police forced him out of the vehicle and violently slammed him on the cold wet ground. The above mentioned Policemen do not and did not have any Authority, Claims and/or Jurisdiction over the living man, Germaney C. Johnson, his living sons Zaviayre G. Johnson, Aziyah G. Johnson and his living wife Abigail L. Johnson.

(A. Johnson aff., PageID #: 442-443.)  There is no further reference in her affidavit as to any

force used to effectuate Johnson's arrest.

According to Officer Kubacki's affidavit, the arrest proceeded as follows:

> 12. Johnson continued arguing with me and I heard Officer Hazou contact dispatch to send other officers because Johnson was not complying with our

orders. I informed him that if he would not provide his operator's license or information that we would arrest him at which time I opened the driver's door.

13. Officer Grace and Officer Bertz arrived on scene and approached the vehicle. I gave Johnson one last opportunity to identify himself and he would not, so I grabbed his left arm and he asked what I was doing and I told him he was under arrest.  He said he was not going, so Officer Grace grabbed his arm and assisted me in getting him out of the vehicle.  Johnson was not pulling back at this time, but he would not come out of the vehicle.

14. After removing Johnson from the vehicle, he attempted to pull away and make it difficult to handcuff him.  His right arm was behind his back, so I put him in a Mechanical Advantage Control Hold #2. Johnson failed to comply with our orders to stop resisting arrest.  He was still pulling away when I transitioned the hold into a take down.  Officer Grace, Officer Bertz, and Officer Hazou assisted in taking Johnson to the ground, so we could handcuff him.

(Kubacki aff., PageID #: 365.)

Officer Hazou's affidavit indicates, in pertinent part, the following:

16. So I requested another unit to respond to the scene and Officer Kubacki spoke with Johnson.  Johnson would not comply with Officer Kubacki's commands.

17. After Officer Grace and Officer Bertz arrived on scene, Officer Kubacki told Johnson he was under arrest and opened the driver's side door to the Cadillac Escalade.  Officer Kubacki and Officer Grace removed Johnson from the vehicle.

18. We ordered Johnson to get on the ground, but he resisted and refused to comply.

19. After Johnson refused to get on the ground, I approached him and displaced his balance with Officer Grace's assistance while Officer Kubacki and Officer Bertz took Johnson by his arms and placed him on his stomach and handcuffed him.

(Hazou aff., PageID #: 362.)  Once Johnson was handcuffed, the officers helped him up and

placed him into the police car.  (Kubacki aff., PageID #: 365.)

Johnson was charged with multiple related criminal offenses in the Berea Municipal

Court.  (R. 28-7, DX G, PageID #: 385, 390, 393, 398.)  After a jury trial, Johnson was convicted

6

of resisting arrest, in violation of Ohio Rev. Code § 2921.33; carrying a concealed weapon, in violation of Ohio Rev. Code § 2923.12; obstructing official business, in violation of Ohio Rev. Code § 2921.31; and failure to display a license, a violation of Ohio Rev. Code § 4507. 35, in the Berea Municipal Court on May 9, 2016.  He received a three-day jail sentence for resisting arrest, and was credited for three days of time served.  He was fined $50.00, plus costs, for resisting arrest, $50.00 on the concealed weapon charge, and $10.00 each on the other two counts.  He was also sentenced to one year probation.  (R. 28-7, DX G, PageID #: 385, 390, 393, 398.)

## III.  Legal Standard

### A.  Summary Judgment

Summary judgment is appropriate where the record "shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  Non-moving parties may rest neither upon the mere allegations of their pleadings nor upon general allegations that issues of fact may exist.  *See Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974).  The Supreme Court held that:

> . . . Rule 56(c)[4] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The evidence need not be in a form admissible at trial in order to avoid summary judgment, but Rule 56(e) requires the opposing party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to

---

[4]  Now Rule 56(a).

interrogatories, and admissions on file,' designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

The Sixth Circuit in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989), has interpreted *Celotex* and two related cases, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574 (1986), as establishing a "new era" of favorable regard for summary judgment motions. *Stree*t points out that the movant has the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. *Street*, 886 F.2d at 1479.

The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990).

The allegations of a complaint drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993). Courts, however, have not abrogated basic pleading essentials in *pro se* suits. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 596 (1972) (per curiam); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). "District courts are not required to conjure up questions never

8

squarely presented to them or to construct full blown claims from sentence fragments. [*Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985)]. To do so would 'require ... [the courts] to explore exhaustively all potential claims of a *pro se* plaintiff, ... [and] would ... transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Stancik v. CNBC*, 420 F. Supp. 2d 800, 808 (N.D. Ohio 2006) (*quoting Beaudett*, 775 F.2d at 1278). *Pro se* litigants are required to state their claims in an understandable and efficient manner. *Stone v. Warfield*, 184 F.R.D. 553, 555 (D. Md. 1999). The court is not required to manufacture allegations which are not properly pled. *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979); *Ayers v. John Does 1-10*, No. C1-94-285, 1995 WL 313681, at *1 (S.D. Ohio Feb. 28, 1995); *Abdool-Rashaad v. Seiter*, 690 F.Supp. 598, 600 (S.D. Ohio 1987).

### B. Section 1983 Claims

To prove a claim under 42 U.S.C. § 1983, the plaintiff must identify a right secured by the Constitution or laws of the United States, and the deprivation of that right by a person acting under color of state law. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Johnson identifies the alleged deprivation of his rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution, as well as under 18 U.S.C. §§ 241, 242, 245, and 42 U.S.C. §§ 1983 and 1985(3). (R. 1, PageID #: 18-19.) Johnson also identifies *Brown v. Texas*, 443 U.S. 47 (1979), as support for his claims. (R. 29, PageID #: 438.)

The complaint alleges that the defendants' actions and conduct, causing injury to Johnson, were "excessive, unreasonable, done intentionally, willfully, maliciously, with a deliberate indifference and/or a reckless disregard for the natural and probable consequences of

9

their acts." (R. 1, PageID #: 19.) Johnson alleges that the defendants used excessive force that "was unreasonable and shocks the conscience," and was done "without lawful justification or reason." Johnson alleges that the defendants violated his constitutional rights, specifically, "the right to be free from unreasonable searches and seizures and seizures of his person and the right to be free from the use of excessive, unreasonable and unjustified force." (*Id.*) Johnson alleges that the defendants' conduct caused him "great physical and emotional pain and suffering and humiliation," in violation of his substantive due process rights. (R. 1, PageID #: 19.)

The defendants move for summary judgment on the Section 1983 claims on the basis of qualified immunity, and on other grounds. (R. 28, PageID #: 18-20.) In his opposition to the motion for summary judgment, Johnson contends that "facts and evidence" supporting a finding against the defendants are contained in his complaint, and the affidavits he submits. (R. 29, PageID #: 430.) However, a party opposing a motion for summary judgment may not rely on "the mere allegations of their pleadings nor upon general allegations that issues of fact may exist." *Bryant*, 490 F.2d at 1275. Johnson needs to go beyond the pleadings, and demonstrate "specific facts showing that there is a genuine issue for trial," based on, for example, his affidavits, depositions, and answers to interrogatories. *Celotex*, 477 U.S. at 324. As noted, Johnson does submit several affidavits, which will be considered when addressing the various claims he raises.

### C. Qualified Immunity

The issue of qualified immunity must be addressed at the earliest possible point in the litigation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). The Supreme Court has stated that the inquiry regarding qualified immunity is

distinct from the merits of the constitutional claim itself. *Saucier*, 533 U.S. at 204; *Dunigan v. Noble*, 390 F.3d 486, 491 n.5 (6th Cir. 2004).

A government official who is performing a discretionary function is entitled to qualified immunity from suit[5] as long as his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999). In other words, any "objectively reasonable" action by a state officer, as assessed in the light of clearly established law at the time of the conduct at issue, will be protected by qualified immunity. *Painter*, 185 F.3d at 567. Qualified immunity can be defeated if the official "knew or reasonably should have known" that the action he took would violate the constitutional rights of the plaintiff. *Harlow*, 457 U.S. at 815. Qualified immunity is a legal question. *Saucier*, 533 U.S. at 200; *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

The defendants bear the initial burden of coming forward with facts to support that they were acting within the scope of their discretionary authority at the time in question. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). The defendants, in this case, have satisfied their initial burden: the police officer-defendants were acting in their official capacities. Although Johnson contends that the defendants "failed to establish any jurisdiction and acted outside of their authorities" (R. 29, PageID #: 430), the court will take judicial notice of the fact that, as Strongsville police officers, they had jurisdiction to enforce the traffic, and other, ordinances of the City of Strongsville, as well as the laws of the State of Ohio.

---

[5] Qualified immunity is an immunity from suit, rather than a mere defense to liability. *Pearson*, 555 U.S. at 231; *Saucier*, 533 U.S. at 200; *Dunigan*, 390 F.3d at 490.

The burden then shifts to Johnson.  The ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity.  *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005); *Cartwright v. City of Marine City*, 336 F.3d 487, 490-491 (6th Cir. 2003) (citing *Rich*, 955 F.2d at 1095).  Upon the assertion of qualified immunity, the plaintiff must put forward "specific, nonconclusory factual allegations" that would defeat the immunity.  *Siegert*, 500 U.S. at 236 (Kennedy, J., concurring).

The Supreme Court has held that the "two-step sequence" previously required by *Saucier v. Katz* "should no longer be regarded as mandatory," and that district courts have discretion in "deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.  The two factors that are relevant to demonstrate whether the defendants are entitled to qualified immunity from suit are "whether the facts that a plaintiff has alleged or shown  make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct."  *Pearson*, 555 U.S. at 232 (internal citations omitted); *see also Saucier*, 533 U.S. at 201.

Whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a general broad proposition."  *Saucier*, 533 U.S. at 201.  The relevant inquiry in determining whether a right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004); *Saucier*, 533 U.S. at 202.  If the law does not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.  *Saucier*, 533 U.S. at 201; *see also Pearson*, 555 U.S. at 232 (citing

12

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "In other words, where a constitutional

violation exists, an officer's personal liability turns on the 'objective legal reasonableness' of the

action in view of the circumstances the officer confronted assessed in light of 'clearly

established' legal rules."  *Dunigan*, 390 F.3d at 491 (citing *Saucier*, 533 U.S. at 202; *Anderson*,

483 U.S. at 639).

### 1.  Alleged Violation(s) of Constitutional Rights

The first factor that is relevant to determining whether the defendants are entitled to

qualified immunity from suit is "whether the facts that a plaintiff has alleged or shown make out

a violation of a constitutional right."  *Pearson*, 555 U.S. at 232 (internal citations omitted); *see

also Saucier*, 533 U.S. at 201.  The complaint alleges both excessive use of force and an

unreasonable seizure.  (R. 1, PageID #: 19.)  The court will set forth the law applicable to

Johnson's excessive force and unreasonable seizure claims, before analyzing quality immunity.

### 2.  Unreasonable Seizure

The Fourth Amendment guarantees a person the right to be free from "unreasonable

searches and seizures."  U.S. Const. Am. IV; *United States v. Obasa*, 15 F.3d 603, 606 (6th Cir.

1994).  The Fourth Amendment requires that all seizures of the person, including seizures that

include only a brief detention, be based on an objective justification.  *United States v.

Mendenhall*, 446 U.S. 544, 551 (1980) (citing *Davis v. Mississippi*, 394 U.S. 721 (1969); *Terry v.

Ohio*, 392 U.S. 1, 16-19 (1968).)  A person is not seized if police simply approach the person,

ask for identification, and ask a few questions.  *Mendenhall*, 446 U.S. at 555 (citing *Terry*, 392

U.S. at 31-33 (Harlan, J., concurring)).  However, "[t]emporary detention of individuals during

the stop of an automobile by the police, even if only for a brief period and for a limited purpose,

13

constitutes a "seizure" of "persons" within the meaning" of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 810 (1996).

In 1977, the Supreme Court ruled that police may temporarily detain a driver if the officer possesses probable cause to believe that the driver violated traffic laws. *Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (per curiam). Since that decision, the Sixth Circuit "has issued conflicting decisions on whether probable cause or reasonable suspicion governs stops initiated based on traffic violations." *United States v. Pittman*, 816 F.3d 419, 423 (6th Cir. 2016), *cert. denied*, 2016 WL 3219203 (U.S. Oct. 3, 2016); *see also United States v. Simpson*, 520 F.3d 531, 538 (6th Cir. 2008) (citing cases). The Sixth Circuit has concluded that "virtually every other circuit court of appeals has held that reasonable suspicion suffices to justify an investigatory stop for a traffic violation." *Simpson*, 520 F.3d at 540. *See generally United States v. Stewart*, 551 F.3d 187, 191-192 (2d Cir. 2009) (majority of circuits find "no Fourth Amendment violation arising from a traffic stop supported by a reasonable suspicion that a traffic violation has occurred," citing cases).

Johnson's opposition brief references, without discussion, *Brown v. Texas*, 443 U.S. 47 (1979). (R. 29, PageID #: 438.) In *Brown*, two police officers stopped the defendant, who they thought "looked suspicious," and then arrested him for violating a Texas statute after he refused to identify himself. The Supreme Court reversed the conviction, finding the officers lacked any reasonable suspicion that the defendant was engaged in unlawful activity. *Mendenhall*, 446 U.S. at 556; *United States v. Harris*, 192 F.3d 580, 584-585 (6th Cir. 1999) (discussing *Brown*). The Sixth Circuit identified *Brown* as a classic example of the "unparticularized suspicion or hunch" warned against in *Terry*. *Harris*, 192 F.3d at 584-585 (discussing *Brown*). By contrast, the Sixth

14

Circuit, in *Harris*, distinguished the case before it from *Brown*, concluding that the officer therein had a reasonable suspicion necessary for an investigatory stop.  *Harris*, 192 F.3d at 584-585; *see also United States v. Martin*, No. 02-6009, 2004 WL 835559, at *5 (6th Cir. Apr. 16, 2004) (officer did not simply have generalized suspicion).

In an analogous 2002 case, the Sixth Circuit held that the defendant-officers were entitled to qualified immunity because there was no clearly established right to refuse to provide identification during an investigatory stop.  *Risbridger v. Connelly*, 275 F.3d 565, 572 (6th Cir. 2002).  Likewise, in *Hiibel*, the Supreme Court concluded that "[t]he principles of Terry permit a State to require a suspect to disclose his name in the course of a Terry stop."  *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 187 (2004); *see also Loza v. Mitchell*, 766 F.3d 466, 476 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 2892 (2015) ("reasonable inquiries" during stop include questions about identity); *State v. Smith*, No. 04AP-859, 2005 WL 1220742, at *7 (Ohio Ct. App. May 24, 2005) (officer did not violate 4th Amendment by asking for ID during stop, quoting *Hiibel*).

### 3. Excessive Force

Claims that officers used excessive force are analyzed under the Fourth Amendment's "objective reasonableness" standard.[6]  *Brosseau*, 543 U.S. at 197; *Saucier*, 533 U.S. at 204; *Graham v. Connor,* 490 U.S. 386, 394-395 (1989).  Determining whether the officer's actions were objectively reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an

---

[6]  The Fourth Amendment applies, not the Eighth Amendment, which applies to convicted inmates.  *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

15

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest." *Graham,* 490 U.S. at 396; *Cole v. City of Dearborn*, No. 10-2392, 2011 WL 5924562, at *3 (6th Cir. Nov. 28, 2011); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992). The Supreme Court has recognized that the right to make an investigatory stop "necessarily carries with it the right to use some degree of physical coercion" to effect it. *Graham,* 490 U.S. at 396 (citing *Terry*, 392 U.S. at 22-27).

As a general matter, the right to be free from excessive force by police is a clearly established Fourth Amendment right. *Cole*, 2011 WL 5924562, at *4 (citing *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001)). If a suspect is passively complying with the officer's commands, that suspect has a clearly established right to be free from force, beyond what may be necessary to carry out an arrest. *Cole*, 2011 WL 5924562, at *5; *see also Wheeler v. City of Cleveland*, No. 09-4089, 2011 WL 944374, at *2 (6th Cir. Mar. 21, 2011); *Baker v. City of Hamilton,* 471 F.3d 601, 608 (6th Cir. 2006). The use of force is reviewed from the perspective of a reasonable law enforcement officer at the scene. *Cole*, 2011 WL 5924562, at *3 (citing *Saucier,* 533 U.S. at 209; *Graham,* 490 U.S. at 396-397). The analysis must "allow[ ] for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Cole*, 2011 WL 5924562, at *3 (quoting *Graham,* 490 U.S. at 396-397).

IV. **Analysis**

### A. The Defendants are Entitled to Qualified Immunity

The burden to refute an assertion of qualified immunity is on Johnson as plaintiff. *Untalan*, 430 F.3d at 314; *Cartwright*, 336 F.3d at 490-491. Johnson argues that the defendants

are not immune because "they have failed to establish any jurisdiction and acted outside their authorities, as individual men, by using excessive force," unjustly arresting him, and causing injury to him, without justification and under color of law.  (R. 29, PageID #: 438.)  As set forth below, Johnson has failed to carry his burden to demonstrate that the defendants are not entitled to qualified immunity on his Section 1983 claims.  Johnson has not established that the investigatory stop based on an objective traffic violation was an unconstitutional seizure, as discussed herein; nor has he shown that the request to see his license and registration was a Fourth Amendment violation.  In addition, there is no clearly established right to refuse to provide identification during such a traffic stop, there is insufficient evidence to support Johnson's claim of excessive force and, even assuming *arguendo* that there was, such claim is barred by Johnson's state court conviction for resisting arrest.

The defendants assert that they are entitled to qualified immunity because they had probable cause for the traffic stop.  The defendants state that Johnson's vehicle was stopped in the middle of the roadway, creating a hazard to himself and others, which they argue created probable cause to determine a traffic violation was occurring in violation of Strongsville Codified Ord. 434.04(a):  "No person shall stop . . . a vehicle . . . as to impede or block the normal and reasonable movement of traffic . . .".  (R. 28, PageID #: 225-226; R. 28-11, Appx. 2, PageID #: 422.)   The Sixth Circuit has held that "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment."  *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc), *cert. denied,* 513 U.S. 828 (1994).  Temporary detention of a motorist upon probable cause to believe he has violated the traffic code does not violate the Fourth

Amendment.  *Whren v. United States*, 517 U.S. 806, 810 (1996); *Mimms*, 434 U.S. at 110-111;

*United States v. Palomino*, 100 F.3d 446, 448 (6th Cir. 1996).  Johnson has failed to provide

facts that establish that the defendants violated a recognized constitutional right.

Once the officers approached Johnson in his stopped vehicle, they requested his driver's

license and registration, which he refused to produce.  (R.1, PageID #: 6-7; R. 28-1, DX A,

Johnson dep., PageID #: 295, 297-299, 310.)  Johnson does not explicitly state why he refused to

comply with the officers' request for his license and registration, other than to state, "neither

Germaney nor his wife or sons were harming anyone or engaging in any criminal activity."  (R.

1, PageID #: 7.)  There is no Fourth Amendment violation in the officers' request to see

Johnson's license and registration.  *See Hiibel*, 542 U.S. at 187; *Loza*, 766 F.3d at  476; *Smith*,

2005 WL 1220742, at *7.  As to this aspect of the incident as well, Johnson has failed to provide

facts that establish that the defendants violated a recognized constitutional right.

Under Ohio law, when a peace officer properly demands to see a driver's license, the

driver may not refuse to display the license.  *State v. Merell*, No. 16172, 1997 WL 156597, at *2

(Ohio Ct. App. Mar. 28, 1997); Ohio Rev. Code § 4507.35(A).  *See generally Russell v. Messina*,

142 F.3d 435, 1998 WL 96572, at *2 (6th Cir. 1998) (TABLE, text in WESTLAW) (per curiam)

(driver's belief that he had not violated traffic law did not justify the refusal to present license

and registration); *Murray v. Harriman City*, No. 3:07CV482, 2010 WL 546590, at *4 (W.D.

Tenn Feb. 10, 2010).  Where an officer has a reasonable suspicion that the driver is violating the

law, the officer is entitled to request the driver's license.  *Merell*, 1997 WL 156597, at *2.  The

defendants have articulated their reasonable suspicion and probable cause that Johnson's stopped

18

vehicle was violating Strongsville Codified Ord. 434.04(a), which rendered their request to see Johnson's license proper.

Further, the Ohio Revised Code section 4507.35(A) indicates, "[t]he operator of a motor vehicle shall display the operator's driver's license, or furnish satisfactory proof that the operator has a driver's license, upon demand of any peace officer…."  In addition, "[w]hen a demand is properly made and the operator has the operator's driver's license on or about the operator's person, the operator shall not refuse to display the license."  *Id.*  Failure to provide satisfactory evidence that the driver is licensed when he does not have his license on or about his person "shall be prima-facie evidence of his not having obtained such license."  Ohio Rev. Code § 4507.35(A).  *See, e.g.*, *United States v. Campbell*, 486 F.3d 949, 957 (6th Cir. 2007), *cert. denied,* 552 U.S. 1083 (2007); *State v. DiGiorgio*, 117 Ohio App.3d 67, 69, 689 N.E.2d 1018, 1019 (Ohio Ct. App. 1996).  A police officer is authorized to make an arrest under the statute when the driver cannot or will not produce a satisfactory form of identification.  *State v. Evans*, 67 Ohio St.3d 405, 409 n.1, 618 N.E.2d 162, 167 n.1 (1993), *cert. denied*, 510 U.S. 1166 (1994); *see generally Campbell*, 486 F.3d at 958.[7]  There is no clearly established right to refuse to provide identification during such an investigatory stop.  *Risbridger*, 275 F.3d at 572.  Johnson has failed to establish that the defendants violated a constitutional right that was clearly established at the time of his arrest.

After Johnson refused multiple requests to provide his license or registration, Officer Hazou asked him three times to step out of the vehicle, but Johnson again refused each request.

---

[7] Ohio Revised Code section 2935.26(A)(2) authorizes a law enforcement officer to arrest a person following the commission of a misdemeanor offense when the person "cannot or will not offer satisfactory evidence of his identity."

(Hazou aff., PageID #: 362, 365.)  Under Ohio law, it is "well established that even without suspicion of criminal activity, a police officer may order a motorist who is stopped for a traffic violation to get out of his car."  *State v. Dozier*, 187 Ohio App. 3d 804, 807, 933 N.E.2d 1160, 1162 (Ohio Ct. App. 2010) (citing *Evans*, 67 Ohio St.3d at 407, 618 N.E.2d 162; *Mimms*, 434 U.S. at 110-111).

Based on the evidence provided by Johnson, the court cannot find that excessive force was used to arrest him, nor that the circumstances of the officers' investigatory stop violate the Fourth Amendment.  The allegations of the complaint are simply that Johnson was "forcefully grabbed" by the arm, and "violently yanked" out of his car.  (Compl., PageID #: 7.)  Johnson's deposition testimony did not address the events of his actual arrest.  The affidavit which Johnson has filed in support simply states he was arrested without a warrant, and without a crime being committed.  (G. Johnson aff., PageID #: 445.)  There is no reference in his own affidavit as to any force used to effectuate his arrest.  His wife's affidavit states that Johnson was "kidnapped," and physically and emotionally injured by Strongsville policemen, who "forced him out of the vehicle and violently slammed him on the cold wet ground." (R. 29-1, PX A, A. Johnson aff., PageID #: 442-443.)  There is no further reference in her affidavit as to any force used to effectuate Johnson's arrest.  Even when construing the allegations in Johnson's favor, the evidence presented demonstrates that a reasonable amount of force was applied in order to execute a valid and justified arrest, to which Johnson was resisting.

In addition, even if the evidence had shown an arguable case of excessive force, the defendants further argue that Johnson's Section 1983 claim of excessive force in the course of the arrest is barred because he was convicted of resisting arrest, and that conviction has not been

reversed.[8]  (R. 28, PageID #: 221-222.)  The defendants rely upon *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Swiecicki v. Delgado*, 463 F.3d 489 (6th Cir. 2006), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007).  In *Heck*, the Supreme Court held that a plaintiff's claim for damages is not cognizable under section 1983 if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction.  *Heck*, 512 U.S. at 487.  The plaintiff must prove that the conviction has been reversed on direct appeal, for a Section 1983 plaintiff to recover damages for unconstitutional harm "caused by actions whose unlawfulness would render a conviction or sentence invalid".  *Heck*, 512 U.S. at 486.  The *Heck* court stated,

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 487.

The Sixth Circuit in, *Swiecicki v. Delgado*, indicated that Ohio law "explicitly provides that a lawful arrest is a necessary element of a conviction for resisting arrest."  *Swiecicki*, 463 F.3d at 494.  The court continued:

> On that basis, Swiecicki's excessive-force claim pursuant to § 1983 would have necessarily implied the invalidity of his conviction for resisting arrest because if the amount of force used was unlawful, an essential element of the underlying offense for resisting arrest would have been negated.

*Swiecicki*, 463 F.3d at 494.

---

[8]  Johnson has appealed his conviction, but no decision has been rendered, thus the conviction stands as of this date.  *See State v. Johnson*, No. CA-16-104577 (Ohio Ct. App. filed June 7, 2016); *see generally* R. 28, DX G, PageID #: 383.

21

The Sixth Circuit more recently refined its analysis of excessive forces claims, noting that excessive force, if applied subsequent to a lawful arrest was accomplished, might not be barred under *Heck*. *Hayward v. Cleveland Clinic Fdn.*, 759 F.3d 601, 611-612 (6th Cir. 2014). Courts can review the temporal sequence of events to determine whether the alleged excessive force was applied after the suspect had ceased to resist arrest. *Hayward*, 759 F.3d at 612. In *Hayward*, the defendants' use of force "occurred before and during the resistance and was only used to procure the arrest." *Id.* As such, the alleged excessive force occurred in response to the resistance and before the arrest was effectuated. *Id.* at 613. The court recognized that, in those circumstances, the excessive force claim was barred by *Heck*.

Here, the facts as provided to the court by the parties establish that the force used on Johnson occurred to effectuate his lawful arrest and was reasonable and necessary to secure his arrest when he actively resisted. There are no facts before the court that show any defendant applied force, let alone excessive force, after Johnson had been handcuffed and arrested. Further, Johnson has not alleged, nor proved, that his conviction for resisting arrest has been overturned. His claims, therefore, are not cognizable under section 1983 because a ruling on them would affect the validity of his conviction. *Heck*, 512 U.S. at 486-487.

## V. OTHER FEDERAL CLAIMS

Johnson alleges several other federal claims in his complaint. He cites 18 U.S.C. §§ 241 (conspiracy against rights), 242 (deprivation of rights under color of law), 245 (federally protected activities), and 42 U.S.C. §§ 1983 and 1985(3). (R. 1, PageID #: 18-19.) The claims which he asserts include "deprivation of free speech and expression" (*id.* at PageID #: 20); "conspiracy and retaliation for the exercise of constitutional rights" (*id.* at PageID #: 20-21);

22

fraud (*id.* at PageID #: 21); "breach of oath" (*id.* at PageID #: 22); and kidnapping (*id.* at PageID #: 23-24).

### A. Criminal Allegations

The defendants' motion asserts that only the United States (as prosecutor) can bring a complaint under 18 U.S.C. §§ 241 and 242.  (R. 28, PageID #: 227, citing *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam).)  In addition, 18 U.S.C. §§ 241, 242 and 245, as criminal statutes, do not provide a cause of action to civil plaintiffs.  (R. 28, PageID #: 227, citing *Bey v. Ohio*, No. 1:11CV1213, 2011 WL 5024188 (N.D. Ohio Oct. 19, 2011).)

The defendants are correct that a private citizen generally has no authority to initiate a federal criminal prosecution, and the statutes cited by Johnson do not give rise to a civil action for damages.  *Franklin v. Henderson*, No. 00-4611, 2001 WL 861697, at *1 (6th Cir. June 20, 2001) (citing *Cok*, 876 F.2d at 2).  Federal courts have repeatedly found that 18 U.S.C. §§ 241, 242 and 245 are criminal statutes, which provide no cause of action to civil plaintiffs.  *Davis v. Sarles*, 134 F. Supp. 3d 223, 228 (D. D.C. 2015) (§§ 241, 242); *Bey*, 2011 WL 5024188, at *3 (§§ 241, 242, 245); *John's Insulation, Inc. v. Siska Const. Co.*, 774 F. Supp. 156, 163 (S.D. N.Y. 1991) (§ 245); *Powers v. Karen*, 768 F. Supp. 46, 51 (E.D. N.Y. 1991), *aff'd*, 963 F.2d 1522 (2d Cir. 1992) (§§ 241, 242); *Purk v. United States*, 747 F. Supp. 1243, 1248 (S.D. Ohio 1989) (§ 242); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D. N.Y. 1985) (§§ 241, 242, 245); *Horn v. Peck*, 130 F. Supp. 536, 539-540 (W.D. Mich. 1955) (§§ 241, 242).  In addition, there is no private cause of action for kidnapping (18 U.S.C. § 1201).  *Harnden v. Croswell-Lexington Cmty. Sch.*, No. 2:15CV12738, 2016 WL 1317942, at *3 (E.D. Mich. Mar. 14, 2016); *Milam v. Southaven Police Dep't*, No. 15CV02029, 2015 WL 1637937, at *7 (W.D. Tenn. Apr. 13, 2015)

23

(citing cases); *Bey*, 2011 WL 5024188, at *3.  Johnson cannot base claims in his civil lawsuit on these statutes.  To the extent that his complaint relies on these criminal statutes, defendants' motion for summary judgment is granted and judgment is granted to the defendants as a matter of law.

## B.  Deprivation of Free Speech

Johnson claims that the defendants' conduct and actions deprived him of his right to free speech and expression.  (R. 1, PageID #: 20.)  The defendants assert that Johnson's First Amendment claim must fail because he has no constitutional right to refuse to provide his driver's license.  (R. 28, PageID #: 227-229.)  The Sixth Circuit has found there is no clearly established right to refuse to provide identification during an investigatory stop.  *Risbridger*, 275 F.3d at 572.  Johnson points to no authority establishing otherwise.  Johnson has failed to establish that the defendants violated a constitutional right that was clearly established at the time of his arrest.

The motion for summary judgment should be granted on Johnson's First Amendment claim.

## C.  Conspiracy

Johnson claims that the defendants' conduct and actions violated his constitutional rights under the First, Fourth, Fifth and Eighth Amendments, as the result of a conspiracy, in violation of Section 1985(3), to punish him for exercising his rights.  (R. 1, PageID #: 20-21.)

In order to state a claim under § 1985(3), a plaintiff must allege (1) the existence of a conspiracy, (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, and (3) an act in furtherance of that conspiracy, (4) which causes injury to person or

24

property, or a deprivation of a right or privilege of a United States citizen. *Majors v. City of Clarksville*, No. 03-5386, 2004 WL 2317527, at *2 (6th Cir. Sept. 22, 2004); *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996), *cert. denied*, 520 U.S. 1267 (1997); *Lara v. City of Chicago*, 968 F.Supp. 1278, 1291 (N.D. Ill. 1997). "The pleading requirements for alleging a section 1985 conspiracy are stringent and must be substantiated." *Powers*, 768 F. Supp. at 51.

Conspiracy claims must be pled with a degree of specificity. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Nedea v. Voinovich*, 994 F.Supp. 910, 918 (N.D. Ohio 1998). Although Johnson uses the word "conspiracy," he fails to allege any facts, let alone provide any evidence, which would support the existence of a conspiracy. *Powers*, 768 F. Supp. at 51. *See, e.g.*, R. 1, PageID #: 20-21; R. 29, PageID #: 437-438. Johnson makes only vague conclusory allegations of a conspiracy, without any factual support. *Nedea*, 994 F.Supp. at 918. Johnson has failed to carry his burden to designate specific facts showing that there is a genuine issue for trial.

The motion for summary judgment should be granted on Johnson's conspiracy claim.

### D. Fraud

Johnson's complaint alleges "fraud" against the defendants, on the theory that the complaint against him[9] was "signed by a man named Dave Tomcho, dba SERGEANT DAVE TOMCHO (a fictitious name, title, entity)." (R. 1, PageID #:21.) The complaint continues: "The complaint/affidavit are [*sic*] fraudulent because SERGEANT DAVE TOMCHO and STATE OF OHIO, City of Strongsville are fiction titles and cannot file a complaint." *Id.*

---

[9] Presumably, Johnson refers to the state court criminal complaint(s) against him in the Berea Municipal Court. *See* R. 28, DX F, PageID #: 378-380.

As mentioned earlier, *pro se* litigants are required to state their claims in an understandable manner.  *Stone*, 184 F.R.D. at 555.  The court is not required to manufacture allegations that  are not properly pled.  *McDonald*, 610 F.2d at 19; *Ayers*, 1995 WL 313681, at *1; *Abdool-Rashaad*, 690 F.Supp. at 600.

The court is unable to decipher this claim.  If the claim is that the criminal complaint against him in the Berea Municipal Court was somehow insufficient, that claim is raised in the wrong forum.  The allegations concerning "fraud," as stated in the complaint are unsupported and do not raise a cognizable constitutional violation subject to a Section 1983 suit.  The motion for summary judgment should be granted on Johnson's "fraud" claim.

### E.   "Breach of Oath"

The complaint also contains the following allegations:

The so-called Public Servants [defendants] violated the law when they used a Police vehicle using *Emergency Flashing Lights* when there was no emergency in fact.  *When a Public Servant/Officer uses flashing lights, he is in fact declaring an emergency which is a felony if there is no emergency, he has violated his oath of office.*

(R. 1, PageID #: 22 (italics and underscore in original).)

The allegations concerning "breach of oath," as stated in the complaint do not raise a constitutional violation subject to a Section 1983 suit.  *See generally McDonald*, 610 F.2d at 19; *Ayers*, 1995 WL 313681, at *1; *Abdool-Rashaad*, 690 F.Supp. at 600 (court not required to manufacture allegations not properly pled).  The motion for summary judgment should be granted on the "breach of oath" claim.

26

## VI.  State Law (Common Law) Claims

Johnson's complaint also alleges three state law claims:  intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.  (R. 1, PageID #: 24-26.)

### A.  State Law Immunity

The defendants argue that they are immune from all state law claims pursuant to Ohio Revised Code Chapter 2744.  (R. 28, PageID #: 231-232.)  They contend that state law grants immunity to employees of political subdivisions against such claims, when as here they allegedly arise out of the defendants' performance of their police functions for the political subdivision.

Ohio law extends immunity to employees of political subdivisions under Ohio Rev. Code § 2744.03(A)(6).  *Shobe v. Seneca County Sheriff's Office*, No. 3:07CV1783, 2008 WL 440582, at *4 (N.D. Ohio Feb. 13, 2008); *Howard v. Taggart*, No. 4:05CV1114, 2007 WL 2840369, at *8 n.6 (N.D. Ohio Sept. 27, 2007); *Fabrey v. McDonald Vill. Police Dep't*, 70 Ohio St.3d 351, 355-356, 639 N.E.2d 31, 35 (1994).  "By enacting R.C. 2744.03(A)(6), the Ohio legislature has determined that a police officer, for example, cannot be held personally liable for acts committed while carrying out official duties unless one of the exceptions to immunity is established." *Meredith v. Cleveland Hts. Police Dept.*,  No. 93436, 2010 WL 2206405, at *4 (Ohio Ct. App. June 3, 2010) (citing *Cook v. City of Cincinnati*, 103 Ohio App.3d 80, 90, 658 N.E.2d 814, 821 (1995), *cert. denied,* 517 U.S. 1120 (1996)).

The statutory immunity does not extend to "acts or omissions [done] with malicious purpose, in bad faith, or in a wanton or reckless manner."  Ohio Rev. Code § 2744.03(A)(6)(b). "Malicious purpose" has been defined as the willful and intentional design to do injury, or to

27

harm another, usually seriously, through conduct that is unlawful or unjustified.  *Culberson v. Doan*, 125 F.Supp.2d 252, 283-284 (S.D. Ohio 2000) (quoting *Cook*, 103 Ohio App.3d at 90, 658 N.E.2d at 821, and *Caruso v. State*, 136 Ohio App.3d 616, 620, 737 N.E.2d 563, 567-568 (2000)). Johnson does not point to any evidence of a "willful and intentional design to do injury, or to harm another, usually seriously," through the use of force in his arrest.  Rather, the evidence before the court indicates that the Johnson was in the driver's seat of a SUV stopped in the middle lane of Pearl Road with its hazards flashing—a traffic violation, he refused multiple requests by officers to show his driver's license, he was warned that his non-compliance would result in his arrest, and he continued to refuse to cooperate with the officers.  *See generally* section II, *supra*.

"Bad faith involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another."  *Culberson*, 125 F.Supp.2d at 283 (quoting *Cook*, 103 Ohio App.3d at 90-91, 658 N.E.2d at 821).  Bad faith is prompted by some sinister motive.  *Id.* at 284. Johnson has not offered any specific facts that the defendants were acting in bad faith, that is, with a dishonest purpose, or an actual intent to mislead or deceive another.  *See generally* R. 29; *Shobe*, 2008 WL 440582, at *8;  *Culbertson*, 125 F.Supp.2d at 283-284.

"Wanton" misconduct is "the failure to exercise any care whatsoever."  *Shobe*, 2008 WL 440582, at *7; *Culbertson*, 125 F.Supp.2d at 283 (quoting *Fabrey*, 70 Ohio St.3d at 356, 639 N.E.2d at 35).  Although the issue of wanton misconduct may be a jury question, it is also an

appropriate issue for summary judgment.[10]  *Fabrey*, 70 Ohio St.3d at 356, 639 N.E.2d at 35; *see also Harris v. City of Circleville*, 583 F.3d 356, 370 (6th Cir. 2009) (quoting *Fabrey*).  The standard for showing wanton misconduct is high.  *Shobe*, 2008 WL 440582, at *7; *Howard*, 2007 WL 2840369, at *9; *Fabrey*, 70 Ohio St.3d at 356, 639 N.E.2d at 35.  The Supreme Court of Ohio in *Fabrey* spoke to this factor:

> In *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 96–97…269 N.E.2d 420, 422, we stated, "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury. *Id*. at 97…269 N.E.2d at 423.

*Fabrey*, 70 Ohio St.3d at 356, 639 N.E.2d at 35; *see also Culbertson*, 125 F.Supp.2d at 283. Johnson has not offered any specific facts that the defendants' actions amounted to excessive force, nor has he provided any basis to conclude that the defendants' actions demonstrate a complete lack of care or consciousness that their conduct would in all probability result in injury. *See generally* R. 29; *Shobe*, 2008 WL 440582, at *7; *Fabrey*, 70 Ohio St.3d at 356, 639 N.E.2d at 35.

The motion for summary judgment on the state law claims should be granted, because the defendants are entitled to immunity against the state-law claims.  Johnson has failed to demonstrate specific facts showing that there is a genuine issue of material fact that defendants'

---

[10]  In *Fabrey*, the state high court affirmed the lower court's grant of summary judgment on the basis of immunity, finding that the defendant's conduct did not rise to the level of wanton misconduct.  *Fabrey*, 70 Ohio St.3d at 357, 639 N.E.2d at 36.  *See also Shobe*, 2008 WL 440582, at *7-*8  (granting summary judgment on immunity); *Howard*, 2007 WL 2840369, at *9 (granting summary judgment); *Cabaniss v. City of Riverside*, 497 F.Supp.2d 862, 895-897 (S.D. Ohio 2006), *aff'd*, 2007 WL 1047588 (6th Cir. Apr. 6, 2007).

"acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner," which would take the defendants outside the state-law statutory immunity.  Ohio Rev. Code § 2744.03(A)(6).

### B.  Intentional Infliction of Emotional Distress

The complaint alleges a common law claim of intentional infliction of emotional distress. (R. 1, PageID #: 24.)  Plaintiff's claim fails because it is barred by state-law immunity, as set forth above, and because there is no triable issue of fact, as Plaintiff has failed to present evidence to support his claim.

Under Ohio law, a claim for intentional infliction of serious emotional distress requires proof of four elements:

> (1) the defendant intended to cause emotional distress, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

*Eblin v. Corrections Med. Ctr.*, 158 Ohio App.3d 801, 803, 822 N.E.2d 814, 820-821 (Ohio Ct. App. 2004) (citing *Ashcroft v. Mt. Sinai Med. Ctr.*, 68 Ohio App.3d 359, 366, 588 N.E.2d 280, 284 (Ohio Ct. App. 1990)).  In Ohio law, liability has been found for the intentional infliction of emotional distress "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666, 671 (1983).  Furthermore, an emotional distress claimant must demonstrate that the "extreme and outrageous conduct" caused the plaintiff "serious emotional distress."  *Yeager*,

6 Ohio St.3d at 369, 453 N.E.2d at 667 (syllabus); *Hockenberry v. Village of Carrollton*, 110

F.Supp.2d 597, 605 (N.D. Ohio 2000).

Ohio courts define "extreme and outrageous conduct" quite narrowly.  *Baab v. AMR*

*Services Corp.*, 811 F.Supp. 1246, 1269 (N.D. Ohio 1993).  A plaintiff must meet a very high

burden to show extreme or outrageous conduct.  Further, the Ohio Supreme Court has stated:

> Serious emotional distress describes emotional injury which is both severe and
> debilitating.  Thus, serious emotional distress may be found where a reasonable
> person, normally constituted, would be unable to cope adequately with the mental
> distress engendered by the circumstances of the case.

*Wright v. Metrohealth Med. Ctr.*, 58 F.3d 1130, 1139 (6th Cir. 1995), *cert. denied*, 516 U.S.

1158 (1996) (quoting *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 317 (6th Cir.1989));

*see also Eblin*, 158 Ohio App.3d at 803, 822 N.E.2d at 821 ("reasonable person, normally

constituted, would be unable to cope adequately").

Johnson has not offered any specific facts demonstrating that the defendants intended to

cause Johnson serious emotional distress, or that they should have known that their actions

would result in serious emotional distress.  *See generally* R. 29.  In addition, as noted above,

Ohio courts define "extreme and outrageous conduct" narrowly, and the court does not find that

Johnson has met his burden to show "extreme or outrageous conduct" during the brief encounter.

Finally, the court does not find that Johnson's being "forcefully grabbed" by the arm, and

"violently yanked" out of his car (compl., PageID #: 7) would result in "serious emotional

distress," such that "a reasonable person, normally constituted, would be unable to cope

adequately with the mental distress" which resulted.  *See, e.g.*, *Voyticky v. Village of Timberlake*,

31

412 F.3d 669, 678 (6th Cir. 2005); *see generally Wright*, 58 F.3d at 1139; *Eblin*, 158 Ohio App.3d at 803, 822 N.E.2d at 821.

In addition, Johnson has failed to demonstrate specific facts showing that there is a genuine issue of material fact that defendants' "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner," which would take the defendants outside the state-law statutory immunity.  *See generally* R. 29; Ohio Rev. Code § 2744.03(A)(6).

The motion for summary judgment should be granted on the claim for intentional infliction of emotional distress.

### C.  Negligent Infliction Of Emotional Distress

The complaint alleges a common law claim of negligent infliction of emotional distress. (R. 1, PageID #: 25.)  Plaintiff's claim fails because it is barred by state-law immunity, as set forth above, and because there is no triable issue of fact, as Plaintiff has failed to present evidence to support his claim.  Under Ohio law, a plaintiff can recover for negligent infliction of emotional distress where the emotional injuries are both serious and reasonably foreseeable. *Ward v. County of Cuyahoga*, 721 F.Supp.2d 677, 694-695 (N.D. Ohio 2010) (citing *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983)).  Typically, recovery for negligent infliction of severe emotional distress has been "limited to instances where the plaintiff has either witnessed or experienced a dangerous accident and/or was subjected to an actual physical peril." *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 163, 677 N.E.2d 308, 329 (1997), *cert. denied,* 522 U.S. 1008 (1997).  Based upon the parties' filings and the facts before this court, Johnson has not identified any evidence of serious emotional injury.

32

In addition, Johnson has failed to demonstrate specific facts showing that there is a genuine issue of material fact that defendants' "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner," which would take the defendants outside the state-law statutory immunity.  *See generally* R. 29; Ohio Rev. Code § 2744.03(A)(6).

The motion for summary judgment should be granted on the claim for negligent infliction of emotional distress.

### D.  Supervisory Liability

Finally, the defendants argue that defendant Sgt. Tomcho cannot be held liable under Section 1983 for the alleged misconduct of the officers he supervises, unless he either encouraged the specific misconduct, or directly participated in it.  In addition, the defendants point out that Sgt. Tomcho was not at the scene of the arrest, but merely signed the subsequent charges.  (R. 28, PageID #: 226.)

The Sixth Circuit has ruled that Section 1983 liability will not be imposed solely on the basis of respondeat superior.  *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied,* 469 U.S. 845 (1984).  At a minimum, a plaintiff must show that "a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."  *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson County*, 668 F.2d 869, 872-874 (6th Cir. 1982).)

The complaint alleges generally that Sgt. Tomcho negligently supervised the acts of Officers Hazou and Kubacki.  (R. 1, PageID #: 26.)  There are no allegations (or evidence) of his direct involvement at the scene of the arrest.  There is no evidence before the court that Sgt. Tomcho implicitly authorized, approved or knowingly acquiesced in any alleged unconstitutional

33

conduct.  Therefore, there is no basis to impose supervisor liability against Sgt. Tomocho and judgment should be granted in his favor.

**VII.    Conclusion**

For the foregoing reasons, the undersigned recommends that Defendants' motion for summary judgment (R. 28) be granted and judgment rendered in their favor.

Dated:   February 13, 2017            /s/ David A. Ruiz
                                      David A. Ruiz
                                      United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).